JUDGE KATHLEEN CARDONE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
El Paso Division



FILED

2014 OCT 16  PM 4: 25



CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                              DEPUTY

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

# EP14CV0384

v.                    Cause No. 3:11-CR-1827-6

HORACIO LICANO PACHECHO,

        Defendant/Movant.

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
## PURSUANT TO TITLE 28 U.S.C. §2255 AND MEMORANDUM OF LAW

    NOW COMES, your movant, Horacio Licano Pachecho, pro se and in proper
person, moving this Court pursuant to Title 28 U.S.C. §2255 to VACATE, SET
ASIDE, or CORRECT his sentence, which was imposed in violation of the Fifth
and Sixth Amendments to the United States Constitution; and in support of
his §2255 motion, your movant states as follows:

## STATEMENT OF JURISDICTION

Pursuant to Title 28 U.S.C. §2255, this Court has jurisdiction to entertain movant's instant §2255 motion on the grounds that his sentence was imposed in violation of the United States Constitution. §2255(a).

## COURSE OF CRIMINAL PROCEEDINGS

Movant pleaded guilty to Conspiracy to Import 100 Kilograms or more of Marijuana (952.39 kilograms) in violation of 21 U.S.C. §§963, 952(a) and 960(b)(2)(G). Movant had no previous criminal history. The conspiracy involved 17 other persons. The case was designated a complex case by agreement of the parties on September 19, 2011.

On July 27, 2012, movant entered into a plea agreement filed with the Court. On August 1, 2012, movant plead guilty and his sentencing ensued on the second setting following the failure of the United States Marshall's service to make a needed witness available.

The second sentencing hearing commenced on March 7, 2013. Following presentation of evidence, the Court overruled movant's trial counsel's objections to various sentencing enhancements and sentenced movant to 188 months confinement in the Federal Bureau of Prisons. On March 14, 2013, movant filed his notice of appeal. On appeal movant challenged the sufficiency of the evidence supporting his sentencing enhancements.

Ultimately, on a day uncertain in November of 2013, the Fifth Circuit Court of Appeals dismissed movant's appeal based upon the validity of an appeal waiver contained in his plea agreement.(Appeal No. 13-50251). No petition for a writ of certiorari was sought.

## STATEMENT OF THE CASE

Movant was charged by indictment filed under seal on July 27, 2011, along with 17 other co-defendants. At all times relevant to movant's plea agreement, he was represented by trial attorney Robert R. Harris, Law Office of Robert R. Harris, 521 Texas Avenue, El Paso, Texas 79901.

The verifiable evidence of movant's involvement in the conspiracy indicate that his involvement was of a short period in the range of 4 months of the 8 year drug conspiracy. Despite no mention of the use of a firearm or the making of a credible threat with a firearm in the factual statement, which was made part of the plea agreement, the Court made findings supporting a two level enhancement under USSG §2D1.1(b)(1) and another two level enhancement under §2D1.1(b)(2). The Court also found that movant did not qualify for a two level deduction under USSG §2D1.1(b)(16), and went on to erroneously apply another two level enhancement under that guideline provision. The findings increased the movant's period of imprisonment for almost 100 months.

The plea agreement indicated that the only sentencing factors that would be taken into account for  enhancement and reduction purposes were "Acceptance of Responsibility" and "Offense Role". (See Exhibit 1 - Movant's Plea Agreement, at pg. 2). Prior to advising movant to accept the terms of the plea agreement, counsel informed movant that there would be no guideline enhancement applied to his sentence relating to conduct involving any firearm. (See Exhibit 2 - Movant's Sworn Affidavit, at ¶2). At sentencing, counsel objected to the enhancements based on the firearm conduct, but to no avail.

Prior to the sentencing evidentiary hearing, movant informed counsel of two witnesses, Rogelio Macias and Luis Serrano, who would contradict the government's evidence that he used a firearm to threaten Macias. (See Movant's

-3-

Affidavit, at ¶3). Counsel did not pursue, subpoena or interview these two witnesses. It is the deficiency of counsel's performance that movant now seeks to be reviewed by the Court under the requirements of the Sixth Amendment to the United States Constitution.

## GROUNDS RAISED

I.   MOVANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO PURSUE, SUBPOENA AND INTERVIEW TWO WITNESSES THAT WOULD HAVE PROVIDED EXCULPATORY TESTIMONY NEGATING A JUDICIAL FINDING THAT MOVANT CONDUCT SUPPORTED A 4 LEVEL GUIDELINE ENHANCEMENT UNDER U.S.S.G. §2D1.1(b)(1) and (b)(2).

II.  MOVANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO OBJECT TO THE ERRONEOUS APPLICATION OF U.S.S.G. §2D1.1(b) (16), RESULTING IN A TWO LEVEL INCREASE THAT WAS NOT AUTHORIZED BY THAT GUIDELINE PROVISION.

III. MOVANT WAS DEPRIVED OF HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL ADVISED HIM TO ACCEPT AN AMBIGUOUS PLEA AGREEMENT WHICH EXPOSED HIM TO A 4 LEVEL ENHANCEMENT AND RENDERED HIS GUILTY PLEA INVOLUNTARY.

## STANDARD OF REVIEW

A §2255 motion is the proper procedural vehicle for raising a claim of ineffective assistance of counsel. United States v. Pierce, 959 F2d 1297, 1301 (5th Cir. 1992). The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. See Cuyler v. Sullivan, 446 US 335, 344 (1980). In order to obtain post-conviction relief due to ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 US 668 (1984).

-4-

First, the petitioner must demonstrate that counsel's performance fell below an objective standard of reasonable professional service. See id. at 687. Second, he must establish that he was prejudiced by the attorney's substandard performance. See id. at 691-92.

In order to obtain post-conviction relief due to ineffective assistance of counsel in the context of a guilty plea, the Strickland prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 US 52, 58-59 (1985). To satisfy this standard, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. 59. In order to obtain post-conviction relief due to ineffective assistance of counsel during the sentencing phase of a non-capital case, a petitioner must establish that he was subjected to additional jail time due to the deficient performance of his attorney. (See United States v. Grammas, 376 F3d 433, 439 (5th Cir. 2004)(citing Glover v. United States, 531 US 198, 203 (2001)).

Here, movant can show and do aver that, but for counsel's misinformation and misadvice regarding his sentence exposure and plea agreement, he would not have plead guilty and would have insisted on going to trial. (See Affidavit, at ¶4). Moreover, movant can establish and do aver that he was subjected to additional prison time due to the deficient performance of counsel.

-5-

Ground I.

Counsel failed to pursue, subpoena and/or interview witnesses who would have provided exculpatory testimony affecting movant's sentencing range.

Supporting Facts and Legal Argument

On a date uncertain, but at some point prior to the sentencing evidentiary hearing on March 7, 2013, movant informed counsel, that Rogelio Macias, a co-defendant whom the government alleged that movant threatened with a firearm, and Luis Serrano, another co-defendant, would testify that he never threatened Macias with a gun at no time before, during, or after the drug conspiracy. (See Affidavit, at ¶3). Counsel indicated that he would seek an interview with Macias and Serrano, but he never did. Id.

Consequently, the government provided uncontroverted evidence at the sentencing evidentiary hearing showing that movant possessed a firearm and made a credible threat of violence when he put a gun to Macias' head, which resulted in movant's base offense level (BOL) being enhanced by four levels under U.S.S.G. §2D1.1(b)(1) and §2D1.1(b)(2).

Where movant reasonably described two potential witnesses that could have contradicted the government's evidence against him, it was counsel's duty to seek them out, ascertain their value to movant's sentencing hearing, and if appropriate secure their attendance at the hearing. (See, e.g., Bell v. Georgia, 554 F2d 1360 (5th Cir. 1977)). Here, counsel did nothing with the information of two exculpatory witnesses. One, of which, was the alleged victim.

-6-

Counsel's performance, under <u>Strickland</u> and <u>Bell</u>, is clearly deficient where he completely failed to pursue, subpoena, and/or interview two exculpatory witnesses, known and accessible to him, and such deficient performance plainly prejudiced movant where it resulted in a four level increase to his BOL. <u>Grammas</u>, 376 at 439.

### Ground II.

Counsel failed to object to the erroneous  and non-applicable application of U.S.S.G. §2D1.1(b)(16) to movant's BOL.

<u>Supporting Facts and Legal Argument</u>

Under U.S.S.G. §2D1.1(b)(16), the district court is directed to award a "decrease" to a defendant's BOL by two levels if certain threshold requirements are met. Movant did not qualify for the reduction of his BOL under this guideline provision because he was identified as a manager or supervisor in the conspiracy. (PSR ¶104). However, instead of simply not reducing movant's BOL by two levels because he did not qualify for such reduction, the probation officer erroneously added two levels to movant's BOL, and the court adopted this PSR finding as accurate. Thus, movant's BOL was "increased" by two levels under §2D1.1(b)(16), which only authorize "decreases" in a defendant's BOL, not increases. <u>Id</u>.

It follows that, counsel's failure to object to, and point out this clear misapplication of §2D1.1(b)(16) to movant's sentencing range constitutes ineffective assistance of counsel at the sentencing phase of the criminal proceedings held against movant. The prejudice is clear, also. Movant's sentencing range was increased by two levels due to counsel's deficient performance in failing to object to a plain misapplication of the guidelines.

"Any amount of actual jail time has Sixth Amendment significance, which constitutes prejudice for purposes of the Strickland test." United States v. Conley, 349 F3d 837, 839 (5th Cir. 2003).

Ground III.

Through an ambiguous plea agreement, counsel misadvised movant as to the specific sentencing enhancements to which he would be exposed if he plead guilty, rendering his guilty plea involuntary.

Supporting Facts and Legal Argument

At the advice of counsel, movant entered a plea agreement which indicated that the only sentencing factors that would be taken into account for enhancement purposes were "Acceptance of Responsibility" and "Offense Role". (See Exhibit 1 - Movant's Plea Agreement, at pg. 2, under "SENTENCING FACTORS"). The perception that the only sentencing factors to be taken into account were the aforementioned factors, flows from the preceding provision in the plea agreement under the heading "IMPOSITION OF SENTENCE". This provision stipulates that;

> "the Court will consult with and take into account the United States Sentencing Guidelines...for the calculation of the Defendant's sentence pursuant to 18 U.S.C. §3553..." - and that;

> "the Court may take other factors into account on sentencing...".

Exhibit 1 - Plea Agreement, at pg. 2.

Reading these stipulations in conjunction with the stipulation under the heading "SENTENCING FACTOR(S)", which states;

> "the following sentencing factor(s) of the USSG shall be consulted and taken into account by the Court for sentencing purposes pursuant to 18 USC §3553... - 'Acceptance of Responsibility' and 'Offense Role'...".

-8-

the reader can conclude that he is (1) agreeing that the only §3553 factors that the Court will take into account are the ones specified as "Acceptance of Responsibility" and "offense Role", or (2) agreeing that the unspecified factors pursuant to §3553 will also be taken into account, along with the specified factors, by the Court.

This ambiguity in the plea agreement prompted movant to ask counsel if his alleged firearm possession and conduct related to that firearm would be used to enhance his sentence. Counsel informed movant that the plea agreement did not permit an enhancement for his alleged firearm conduct. (See Affidavit, at ¶2). However, this was not the case. After reviewing movant's PSR, counsel discovered that movant was subject to a four level enhancement for the alleged firearm conduct under §2D1.1(b)(1) and (b)(2). Counsel informed movant that he would set forth objections to those firearm related enhancements. Although counsel objected to those enhancements, it was to no avail and such objections could not cure counsel's misinformation concerning movant's exposure to the firearm enhancements.

One of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty. By grossly misadvising movant concerning his exposure to specific guideline enhancements, counsel breached his duty as a defense lawyer in a criminal proceeding to advise movant fully and accurately on the sentence he would be exposed to if he plead guilty pursuant to the offered plea agreement. United States v. Ridgeway, 321 F2d 512, 514 (5th Cir. 2003). Movant's counsel's performance was deficient because, among other things, he was unfamiliar with the Sentencing Guidelines and substantially misstated movant's exposure to guideline enhancements if he accepted the ambiguous plea agreement, and plead guiulty to the charges against him.

-9-

A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice. (See <u>Cuyler v. Sullivan</u>, 446 US 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences". <u>Bradshaw v. Stumpf</u>, 545 US 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005). The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. (See <u>United States v. Gracia</u>, 983 F2d 625, 627-28 (5th Cir. 1993).

Here, movant could not have had "sufficient awareness of the relevant circumstances and likely consequences", nor could he have had "a realistic appreciation of the consequences of the plea" where he was misadvised by counsel and through an ambiguous plea agreement of the sentencing enhancements he would be exposed to, if he plead guilty, as he did. Although movant agreed to be sentenced pursuant to the applicable Sentencing Guidelines, he was lead to believe, by counsel's misinformation, that no sentencing enhancement, under those guidelines, would be applied to his sentence relating to the firearm conduct alleged against him. Movant was further mislead by the aforementioned ambiguities in the plea agreement.

The plea agreement clearly specified two sentencing factors to be applied to movant's sentence - Acceptance of Responsibility and Offense Role. It did not specify any application of enhancements relating to movant's alleged firearm conduct. Because federal courts must "construe all ambiguities in the plea agreement against the government", <u>United States v. Martinez</u>,

-10-

263 F3d 436, 438 (5th Cir. 2001), it cannot be said that movant agreed to the application of guideline enhancements relating to his alleged firearm conduct.

Consequently, movant's guilty plea, flowing from counsel's misadvice and misinformation concerning movant's exposure to guideline enhancements and his ambiguous plea agreement, cannot be "knowing", "voluntary", nor "intelligent", and is therefore involuntary as a result of counsel's ineffectiveness. Absent counsel's deficient performance, movant would have received a certain lower sentence.

Movant was held responsible for 952.39 kilograms of marijuana, therefore his BOL was 30. (PSR ¶98). Due to counsel's ineffectiveness, four levels were added under U.S.S.G. §§2D1.1(b)(1) and 2D1.1(b)(2), which increased movant's offense level to 34. (PSR ¶99 and ¶100). Due to counsel's ineffectiveness, two levels were erroneously applied under §2D1.1(b)(16), which increased movant's offense level to 36. (PSR ¶102). Three levels were added under §3B1.1(a), not attributable to counsel error, which increased movant's offense level to 39. (PSR ¶104). After a three level reduction for acceptance of responsibility was applied, movant's total offense level was determined as 36. (PSR ¶¶ 106, 108).

With a CHC of I and a total offense level of 36, the advisory guideline range applicable to movant was 188-235 months imprisonment. (PSR ¶127; R.279). Absent the erroneous six level enhancements attributable to counsel's ineffectiveness, movant's total base offense level would have been 30, and his advisory guideline range would have been 97-121 months imprisonment. Almost 100 months less than what his range is due to counsel's errors.

CONCLUSION

Based on the foregoing facts, case law and legal arguments, movant prays that the Court will GRANT his §2255 motion speedily, or at minimum, order an EVIDENTIARY hearing in this matter, or provide whatever other remedy this Court deems appropriate.

Dated: 7/07/14

Respectfully submitted,

Horacio Licano Pacheco

HORACIO LICANO PACHECO, Pro se
Reg. No. 81458-280
FCI McDowell
P.O. Box 1009
Welch, WV 24801

-12-

E X H I B I T  **1**

MOVANT'S PLEA AGREEMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO.  EP-11-CR-1827-KC(6) |
| | § | |
| HORACIO LICANO PACHECO, | § | |
| | § | |
| Defendant. | § | |

## PLEA AGREEMENT

Come now the United States of America, by and through its United States Attorney for the Western District of Texas, and the Defendant **HORACIO LICANO PACHECO**, by and through Defendant's attorney, and notify this Court that a Plea Agreement has been reached between the parties in the above entitled and numbered cause as follows:

## COUNT(S) OF CONVICTION

The Defendant, **HORACIO LICANO PACHECO**, agrees to plead guilty to Count One of the Indictment currently pending in the above entitled and numbered cause, charging a violation of Title 21 U.S.C. § 963, Conspiracy to Import a Controlled Substance, to wit: 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana.  In exchange, the Government agrees to  move for dismissal of the remaining count(s) of the Indictment currently pending against the Defendant at the time of sentencing.

## RANGE OF PUNISHMENT

The Defendant understands that the range of punishment for the Defendant's offense is a term of imprisonment of not less than five (5) years or more than forty (40) years, a fine not to exceed $5,000,000, a term of supervised release of at least four (4) years, and a $100 special assessment.

The Defendant further understands that in addition to the punishment described above, if the Defendant is not a citizen of the United States, a plea of guilty can affect immigration status, and may result in deportation and removal from the United States, may prevent the Defendant from ever lawfully reentering or remaining in the United States, and may result in the denial of naturalization.

## IMPOSITION OF SENTENCE

The parties agree that the Court will consult with and take into account the United States Sentencing Guidelines and accompanying policy statements ("the U.S.S.G.") for the calculation of the Defendant's sentence pursuant to 18 U.S.C. § 3553 as construed by *United States v. Booker,* 543 U.S. 220 (2005). However, the Defendant understands that the U.S.S.G. is advisory and that the Court may take other factors into account on sentencing which would result in a greater or lesser sentence than the sentencing range calculated under the U.S.S.G.

## SENTENCING FACTOR(S)

In determining the Defendant's sentence, the parties agree that the following sentencing factor(s) of the U.S.S.G. shall be consulted and taken into account by the Court for sentencing purposes pursuant to 18 U.S.C. § 3553, as construed in the *United States v. Booker* case cited above:

Acceptance of Responsibility --

The Government will not oppose the award of a two-level adjustment for acceptance of responsibility. The Defendant realizes that award of such adjustment ultimately remains in the Court's discretion. Further, if the two-level adjustment is granted and, if applicable, the Government will move, at the time of sentencing, for the award of the third-level for acceptance of responsibility.

2

<u>Offense Role</u> --

The Government does not oppose a determination that Defendant's role in the offense conduct constituted a "neutral role" should the evidence support such a determination.

## WAIVER OF ADDITIONAL DISCOVERY

The Defendant waives the right to any additional discovery, including those rights conferred by Rule 16(a), Federal Rules of Criminal Procedure and the Court's Standing Discovery Order.

## WAIVER OF APPEAL AND COLLATERAL ATTACK

The Defendant is aware that any sentence imposed will be up to the maximum allowed by statute for the offense(s) to which the Defendant is pleading guilty. The Defendant is also aware that the sentence to be imposed is not subject to parole. By entering into this plea agreement, and as a term of this plea agreement, the Defendant voluntarily and knowingly waives any right to appeal the sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742, as amended by the *United States v. Booker* case cited above.

The Defendant also voluntarily and knowingly waives the right to contest the sentence in any post-conviction proceeding, including but not limited to, a proceeding pursuant to 28 U.S.C. § 2255; <u>provided</u>, however, that consistent with principles of professional responsibility imposed on the Defendant's counsel and counsel for the Government, the Defendant does not waive the right to challenge the sentence to the extent that it is the result of a violation of the Defendant's constitutional rights based on claims of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension.

The Defendant waives all rights to challenge the sentence imposed, knowing that the Court has not yet determined that sentence. The Defendant understands and agrees that any estimate of the probable sentencing range that may be received from defense counsel, the Government, or the United States Probation Office is not a promise, did not induce the guilty plea or this waiver, and does not bind the Government, the United States Probation Office, or the Court. In other words, the Defendant understands that the Defendant may not challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by defense counsel, the attorney for the Government, or the United States Probation Officer. Realizing the uncertainty in estimating what sentence the Defendant will ultimately receive, the Defendant knowingly and voluntarily waives any rights to appeal the sentence or contest it in any post-conviction proceeding in exchange for the concessions made by the Government in this plea agreement.

## HYDE AMENDMENT

The Defendant hereby stipulates and agrees that by reason of the dismissal of, or the Government's agreement to forebear filing or pursuing, certain criminal charges as a part of this plea agreement, the Defendant is not a "prevailing party" for the purpose of seeking attorneys' fees and other litigation expenses under the "Hyde Amendment," Pub.L.No. 105-119, Title VI, § 617, 111 Stat. 2440, 2519, codified at 18 U.S.C. § 3006A. The Defendant further agrees that as a term of this plea agreement, the Defendant hereby waives any and all claims against the United States for attorney's fees and other litigation expenses under said law.

## RESERVATION OF GOVERNMENT'S RIGHTS

The Government reserves the right to:  (1) bring its version of the facts of this case to the attention of the United States Probation Office in connection with that office's preparation of a presentence report; (2) dispute sentencing factors and/or facts material to sentencing in the presentence report; and (3) seek resolution of such factors and/or facts in conference with defense counsel and the United States Probation Office.

## ASSISTANCE OF COUNSEL

The Defendant acknowledges that the Defendant's attorney has advised the Defendant of the nature of the charges, any possible defense to the charges, and range of possible sentences.  The Defendant is satisfied that Defendant's counsel has provided competent representation.

## ADMISSION TO FACTUAL BASIS

Attached to this plea agreement and incorporated by reference herein for all purposes is a written factual basis supporting Defendant's plea of guilty.  By signing the Plea Agreement, the Defendant admits that the facts set out in the attached factual basis as alleged by the Government are true and correct, and specifically stipulates that the weight of the controlled substance(s) at issue is the weight stated in the factual basis herein.   The Government intends to read or summarize this factual basis in open court at the time of the plea.

## SPECIAL ASSESSMENT PAYMENT

It is further agreed that the Defendant shall pay the full amount of the assessment imposed by the Court pursuant to Title 18 U.S.C. § 3013.  A cashier's check or money order shall be made payable to the "United States District Clerk" and mailed, together with a copy of the signed plea agreement and the executed "Transmittal Form for Payment to Clerk, U.S. District Court," to: The

Executive Office of the Clerk, United States District Court, Western District of Texas; Attn: Finance,

727 E. Durango Blvd., Suite A500, San Antonio, TX 78206.

Respectfully submitted,

ROBERT PITMAN
UNITED STATES ATTORNEY

BY: _____
KENNETH P. KAPLAN
Assistant U.S. Attorney

HORACIO LICANO PACHECO
Defendant

ROBERT HARRIS
Attorney for Defendant

6

E X H I B I T   2

MOVANT'S SWORN AFFIDAVIT
and
relevant page's (39,40,41) for P.S.I.
Pre
Sentence
report

# A F F I D A V I T

## of

### HORACIO LICANO PACHECHO

State of West Virginia:
County of McDowell:


    I, Horacio Licano Pachecho, depose and say under the penalty of perjury the following:

1.    At all times relevant to my plea agreement and guilty plea in my criminal case under under Cause No. 3:11-CR-1827-6, I was represented by Robert R. Harris, Attorney at Law.

2.    At a time uncertain, but before I accepted the plea agreement in my case and plead guilty, I asked Mr. Harris if I would be enhanced for the things the government claimed I did with a gun. Mr. Harris told me that my plea agreement would not allow an enhancement of my sentence for any conduct relating to a gun.

3.    At a time uncertain, but before I acepted the plea agreement in my case and plead guilty, I told Mr. Harris that my co-defendants Rogelio Macias and Luis Serrano would testify that I did not ever use a gun to threaten Macias. Mr. Harris said he would check into it. But he never did.

4.    Had Mr. Harris informed me of the guideline enhancements for the use of a gun, I would not have pleaded guilty and would have went to trial.

I SWEAR UNDER THE PENALTY OF PERJURY THAT THE FOREGOING FACTS AND STATEMENTS ARE TRUE AND ACCURATE TO THE BEST OF MY ABILITY AND KNOWLEDGE.

Dated: 7/07/14

STATE OF WEST VIRGINIA
COUNTY OF McDowell
The foregoing instrument was
acknowledged before me this
7th day of July 2014 by
Horacio Licano Pacheco.

_____
Notary Public

By Affiant: Horacio Licano Pacheco
HORACIO LICANO PACHECHO



NOTARY PUBLIC OFFICIAL SEAL
Miguel Felix
State of West Virginia
My Commission Expires
August 15, 2023
Federal Bureau of Prisons
P O Box 1029
Welch, WV 24801

August 15, 2023
My Commission Expires

agreed with Macias, Serrano, Garcia-Lopez, and others known and unknown to import marijuana from the Republic of Mexico into the United States. As such, pursuant to U.S.S.G.§ 3E1.1, an adjustment for acceptance of responsibility is warranted.

## Offense Level Computations

97.     The Guidelines Manual effective November 1, 2012 has been used in this case. In accordance with U.S.S.G. § 1B1.3, Relevant Conduct, Licano Pacheco is held accountable for a total of 952.39 kilograms of marijuana he conspired to import as part of a jointly undertaken criminal venture.

Count 1 - Conspiracy to Import 100 Kilograms or More of Marijuana

98.     **Base Offense Level:** The U.S. Sentencing Commission guideline for violation of 21 U.S.C. §§ 963, 952(a) and 960(a)(1) is found in U.S.S.G. § 2D1.1(a)(5). For 952.39 kilograms of marijuana, the Drug Quantity Table establishes a base offense level of 30.     <u>30</u>

99.     **Specific Offense Characteristics:** Pursuant to U.S.S.G. § 2D1.1 (b)(1), if a dangerous weapon (including a firearm) was possessed, increase by 2 levels.     <u>+2</u>

After the December 6, 2010 marijuana seizure, recorded conversations reflected that the source of supply demanded payment from Rogelio Macias and Serrano to cover the lost load. Licano Pacheco was the most aggressive in pursuing the debt and at one point threatened to kill Rogelio Macias. On August 11, 2011, during his post-arrest statement, Rogelio Macias stated that subsequent to the December 6, 2010, marijuana seizure, Licano Pacheco took him to Licano Pacheco's car lot in Ciudad Juarez, Mexico, and put a gun to his head and told him he owed him $67,500 for the seized load. As such, it appears a two-level increase is

warranted.

100. **Specific Offense Characteristics:** Pursuant to U.S.S.G. § 2D1.1(b)(2), if the Defendant used violence, made a credible threat to use violence, or directed the use of violence, increase by 2 levels.

+2   *No Weap*
*No threat*

After the December 6, 2010 marijuana seizure, recorded conversations reflected that the source of supply demanded payment from Rogelio Macias and Serrano to cover the lost load. Licano Pacheco was the most aggressive in pursuing the debt and at one point threatened to kill Rogelio Macias. On August 11, 2011, during his post-arrest statement, Rogelio Macias stated that subsequent to the December 6, 2010, marijuana seizure, Licano Pacheco took him to Licano Pacheco's car lot in Ciudad Juarez, Mexico, and put a gun to his head and told him he owed him $67,500 for the seized load. As such, it appears a two-level increase is warranted.

101. **Specific Offense Characteristics:** Pursuant to U.S.S.G. § 2D1.1(b)(14)(C), if the Defendant receives an adjustment under § 3B1.1 (Aggravating Role) and the Defendant was directly involved in the importation of a controlled substance, increase by 2 levels.

0

During the conspiracy, Licano Pacheco was identified as a manager/supervisor. Licano Pacheco is identified as one of the primary marijuana source of supply for the Macias/Serrano DTO. Licano Pacheco imported significant amounts of marijuana into the United States via passenger vehicles through the ports of entry in El Paso, Texas. Licano Pacheco recruited individuals to smuggle the drug-laden vehicles into the United States and then coordinated with the Macias/Serrano DTO for the marijuana's further distribution into the interior of the United States. Moreover, the Macias/Serrano DTO was responsible for delivering drug proceeds to Licano Pacheco in Ciudad Juarez. As such, it appears a two-

level increase is warranted.

102. **Specific Offense Characteristics:** Pursuant to U.S.S.G. § 2D1.1(b)(16), a decrease of two levels is not warranted as the Defendant used credible threats of violence and possessed a firearm in connection with the offense; additionally, he has been identified as a manager/supervisor in this conspiracy.  U.S.S.G. § 5C1.2(a)(2) and (4). +2

103. **Victim-Related Adjustments:** None 0

104. **Adjustment for Role in the Offense:**  Based on available information, Licano Pacheco is identified as a manager/supervisor in this conspiracy. Licano Pacheco is identified as a member of an unidentified DTO in Ciudad Juarez, Mexico, and he is identified as one of the primary marijuana source of supply for the Macias/Serrano DTO. The investigation revealed a long-standing drug trafficking relationship between Licano Pacheco and the DTO.  Licano Pacheco was based out of Ciudad Juarez, Mexico, and imported significant amounts of marijuana into the United States via passenger vehicles through the ports of entry in El Paso, Texas.  Licano Pacheco recruited individuals to smuggle the drug-laden vehicles into the United States and then coordinated with the Macias/Serrano DTO for the marijuana's further distribution into the interior of the United States. Specifically, Licano Pacheco coordinated with the DTO as to the drop off and pick up points of the load vehicles upon successfully entering the United States, and Licano Pacheco regularly oversaw the removal of the marijuana from the load vehicles. Moreover, the Macias/Serrano DTO was responsible for delivering drug proceeds to Licano Pacheco in Ciudad Juarez.  Subsequent to the December 6, 2010, seizure, Licano Pacheco took Rogelio Macias to Ciudad Juarez and put a gun to his head while demanding $67,500 for the lost load.  As such, it appears a three-level upward adjustment, pursuant to U.S.S.G. 3B1.1(a), is warranted. +3